IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| PAUL T. HARGEN-RODRÍGUEZ, et al. | ) | |
| | ) | |
| Plaintiffs | ) | Case No. 16-2340 (FAB) |
| | ) | |
| v. | ) | |
| | ) | |
| UBS TRUST COMPANY OF PUERTO | ) | |
| RICO, et al., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## JOINT REPLY IN SUPPORT OF JOINT MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

TO THE HONORABLE COURT:

NOW COME defendants UBS Trust Company of Puerto Rico ("UBS Trust"), UBS Financial Services Incorporated of Puerto Rico ("UBS-PR") and UBS Financial Services Inc. ("UBS Financial") (the latter two sometimes jointly referred to as "UBS" and, together with UBS Trust, as the "UBS Defendants"), through the undersigned counsel, without waiving any claim or defense, and without submitting to the *in personam* jurisdiction or venue of this Court, to submit this reply in further support of their *Joint Motion to Compel Arbitration and Stay Proceedings* (the "Motion to Compel," Dkt. 14):

## INTRODUCTION

In the Motion to Compel, the UBS Defendants showed that arbitration is proper and should be ordered because plaintiff Paul T. Hargen-Rodríguez ("Hargen-Rodríguez") is a party to a Client Relationship Agreement that provides for mandatory arbitration of any dispute between him and UBS Financial or UBS-PR, regardless of when the dispute originated. Although not a signatory to the Client Relationship Agreement, UBS Trust may also compel

Hargen-Rodríguez to arbitrate under that agreement's arbitration provision because the Complaint's allegations against UBS Trust – and which UBS Trust seeks to resolve in arbitration – are intertwined with the Client Relationship Agreement.

The UBS Defendants additionally demonstrated that arbitration should be compelled because Plaintiffs are bound by an Account Agreement signed by UBS Financial and UBS Trust, the latter as trustee of a trust (the "Hargen Trust") set up for the benefit of Hargen-Rodríguez. Like the Client Relationship Agreement, the Account Agreement also contains a broad arbitration provision.  Despite not being signatories, Plaintiffs are estopped from avoiding arbitration under the Account Agreement because they have embraced it and received direct benefits from its performance, and because Hargen-Rodríguez is a third-party beneficiary of that agreement.

Plaintiffs oppose the Motion to Compel with four arguments.  First they argue that they cannot be compelled to arbitrate under the Client Relationship Agreement because it is "both procedurally and substantively unconscionable." (Dkt. 22, at p. 12.)  Second, Plaintiffs contend that they cannot be compelled to arbitrate under the Account Agreement because they are not equitably estopped from avoiding that agreement's arbitration provision, and they are not third-party beneficiaries of that agreement. (*See id*. at pp. 20-26.)  Plaintiffs' third argument is that the UBS Defendants waived any right to demand arbitration. (*See id*. at pp. 26-29.)  Their fourth argument is that any non-arbitrable claims should not be stayed pending arbitration. (*See id*. at pp. 29-30.)  Plaintiffs are wrong.

**ARGUMENT**

1.    **The Client Relationship Agreement's Arbitration Provision Is Neither Procedurally Nor Substantively Unconscionable**.

Based on inapplicable Puerto Rico and California law, Plaintiffs challenge the validity of the Client Relationship Agreement's arbitration provision as "both procedurally and substantively unconscionable." (Dkt. 22, at p. 12.) They allege that, in June 2016, Mr. Hargen-Rodríguez was told that, to receive the distribution of the Hargen Trust's assets, he had to enter into the Client Relationship Agreement and waive his right to a judicial forum by agreeing to arbitration, and that he was not given any choice to receive the Trust's assets but to open an account with UBS. (*See id*. at ¶¶ 28, 29 & pp. 12-14.) This is mere after-the-fact rationalization.

The Client Relationship Agreement, according to its terms, is governed by the laws of the State of New York. (*See* Dkt. 14-1, at pp. 114-15 of 123.) Under New York law, an unconscionable contract is one that "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." Gillman v. Chase Manhattan Bank, N.A., 534 N.E.2d 824, 828 (N.Y. 1988) (citations and internal quotation marks omitted)). *See also* 22 N.Y. JUR.2D CONTRACTS § 151 ("The concept of unconscionability is reserved for the type of agreement *so one-sided* that it shocks the conscience and confounds the judgment of any person of common sense, such that no individual in his or her senses and not under a delusion would make on the one hand, and as no honest or fair person would accept, on the other.") (footnotes and internal quotation marks omitted; emphasis added).

The unconscionability determination "generally requires a showing that the contract was *both* procedurally *and* substantively unconscionable when made—i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which

are unreasonably favorable to the other party." *Id*. (internal quotation marks omitted; emphasis added).  Here, Plaintiffs' challenge fails on both counts.

     a.    <u>The Client Relationship Agreement's Arbitration Provision Is Not Substantively Unconscionable</u>.

Other than simply ***characterizing*** the Client Relationship Agreement's arbitration provision as substantively unconscionable, Plaintiffs' opposition ***does not argue*** why this is purportedly so.  This failure is fatal to Plaintiffs' position because, save for exceptional cases, which this one is not,[1] a party questioning a contract's conscionability must show that ***both*** elements of the inquiry are met – the substantive ***and*** the procedural.  *See* <u>Gillman</u>, 534 N.E.2d, at 829.  Since Plaintiffs have not discharged this burden, their unconscionability argument must be rejected.  But even if it were considered that Plaintiffs' opposition somehow argues the alleged substantive unconscionability of the Client Relationship Agreement's arbitration provision, the argument is wrong.

The issue of substantive unconscionability "entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged…." *Id*. at 829.  Here, Plaintiffs do not – and cannot – show that the Client Relationship Agreement's arbitration provision favors – let alone unreasonably so – the UBS Defendants.  By its own terms, the arbitration provision binds Hargen-Rodríguez, UBS Financial and UBS-PR equally.[2]  Unlike the arbitration provision at issue in <u>Carlson v. Home</u>

---

[1] *See, e.g.*, <u>Jones v. Star Credit Corp.</u> 298 N.Y.S.2d 264 (1969) (holding substantively unconscionable as a matter of law an agreement to sell to welfare recipients a home freezer unit with a maximum retail value of $300 for $900, plus tax and credit and insurance charges, for a total price of $1,234.80).

[2] *See* Dkt. 14-6, at pp. 120-21 of 123.  Moreover, as shown in the Motion to Compel, UBS Trust is entitled to invoke the Client Relationship Agreement's arbitration provision, because the scheme of concerted and unified conduct by the UBS Defendants alleged in the Complaint is such that makes it appropriate to compel Hargen-Rodríguez to resolve the Complaint's allegations in arbitration with the UBS Defendants.  (*See* Dkt. 14, at pp. 14-17.)  For example, Plaintiffs seek to find the UBS Defendants jointly liable for an alleged "scheme designed and implemented … to illegally collect revenue based on material representations and omissions in the fraudulent sale of securities." (Compl. ¶ 4.99.)  The securities at issue were purchased by UBS Trust, through UBS-PR, with assets of the Hargen

Team Pest Defense, Inc., 239 Cal. App. 4th 619 (2015), one of the California decisions that

Plaintiffs cite in their opposition, the Client Relationship Agreement's arbitration provision at

issue in this case does not give UBS Financial or UBS-PR the right to sue Hargen-Rodríguez.

*Compare with id*. at 635 (finding an employment agreement's arbitration provision substantively

unconscionable because the employer "was exempt from having to arbitrate its most likely

claims against" the employee).

Also, the widespread use of arbitration as a mechanism for the resolution of disputes is

unquestionable.  The federal government, New York and Puerto Rico share a policy that strongly

favors arbitration.  *See, e.g.*, Southland Corp. v. Keating, 465 U.S. 1, 10 (1984) ("In enacting § 2

of the [F]ederal [Arbitration] Act, Congress declared a national policy favoring arbitration and

withdrew the power of the states to require a judicial forum for the resolution of claims which

the contracting parties agreed to resolve by arbitration."); Cardinale v. 267 Sixth St. LLC, 2014

WL 4799691, at *5 (S.D.N.Y. Sept. 26, 2014) ("New York has a long and strong public policy

favoring arbitration.") (citation omitted); Sears Roebuck & Co. v. Herbert H. Johnson Assoc.,

Inc., 325 F. Supp. 1338, 1340 (D.P.R. 1971) ("In Puerto Rico there is a strong public policy

favoring the arbitration of disputes.") (citation omitted).  Indeed, the passage of the Federal

Arbitration Act gave "rise to the widespread use of arbitration clauses in commercial contracts."

---

Trust in account with UBS for the benefit of the Trust's beneficiaries, including Hargen-Rodríguez.  Even the counts apparently asserted solely as to UBS Trust, for breach of fiduciary (Count IV), breach of contract (Count V) and damages for fees incurred (Count VI), are grounded on the alleged "scheme designed and implemented by the UBS Defendants."  (*Id*.)  The Complaint charges that, as part of this scheme, UBS Trust failed to contact Sánchez to inform her of her beneficiary status in order to invest the Trust's income that would have been distributed to her. (*See id*. ¶¶ 4.97-4.99.)  The relationship among the parties and the conduct that the Plaintiffs attribute to the UBS Defendants also warrant compelling Hargen-Rodríguez to arbitrate the Complaint's allegations against UBS Trust – the Complaint charges a fraudulent scheme allegedly devised and implemented jointly by the UBS Defendants, including UBS Trust.  Additionally, Plaintiffs should be compelled to arbitrate their inextricably intertwined claims against UBS Trust because UBS Trust is an affiliate of UBS Financial and UBS-PR.  Plaintiffs' opposition simply ignores the allegations in their own Complaint.  (*See* Dkt. 22, at pp. 8-20.)  Alternatively, because Plaintiffs' claims against UBS Trust are intertwined with those against UBS-PR and UBS Financial, they should be stayed pending the outcome of arbitration pursuant to 9 U.S.C. § 3.

JILL GROSS, *The Historical Basis of Securities Arbitration As an Investor Protection Mechanism*, 2016 J. DISP. RESOL. 171, 180 (2016).

Plaintiffs do not argue – and cannot argue – that arbitration clauses are either unreasonable, unduly harsh or oppressive, less so in a commercial context. To the contrary, specifically in the financial industry, "the securities arbitration system has played and continues to play a critical, even irreplaceable, role in the national scheme of investor protection." *Id.* at 184. For all these reasons, the Client Relationship Agreement's arbitration provision *is not* substantively unconscionable.

    b.   <u>The Client Relationship Agreement's Arbitration Provision Is Also Not Procedurally Unconscionable</u>.

Plaintiffs argue that the Client Relationship Agreement's arbitration provision is procedurally unconscionable because Hargen-Rodríguez was allegedly put in a "take it or leave" position to open a personal investment account with UBS for the distribution to him of the Hargen Trust's assets, that way forcing him to forfeit his right to a judicial forum. (Dkt. 22, at p. 13.) According to the affidavit submitted by Hargen-Rodríguez:

> 15.    Days after [May 31, 2016], Ms. ***Magda Broco***, staff from UBS PR, contacted me personally and informed me that as a necessary pre-requisite to performing the distribution of the assets of the Hargen Trust, I needed to open a UBS PR brokerage account and entered into a client relationship agreement with UBS PR. Staff of UBS PR did not give me a different alternative or choice.

> 16.    I opened the brokerage account and entered into a Client Relationship Agreement ("CRA") only because I was not given a choice to distribute the assets in the Hargen Trust that did not require opening [a] UBS brokerage account and entering into a client relationship agreement with UBS PR.

(Dkt. 22-1, at ¶¶ 15, 16; emphasis added.)

Aside from the affidavit's inaccuracies – Hargen opened his account and executed the

Client Relationship Agreement not with UBS-PR, but with UBS Financial – its truth is belied by

Magda T. Broco's own account,[3] and should not be credited:

14.  Early in June 2016, Mr. Javier González, Executive Director of UBS Trust Company of Puerto Rico ("UBS Trust"), informed me that UBS Trust had sent a communication to Mr. Hargen-Rodríguez concerning the termination of the Hargen Trust.

15.  On or around June 6, 2016, I called Mr. Hargen-Rodríguez to confirm if he had received the communication.  He responded that he had received it, but had yet to respond to it.

16.  Given that the Trust would be terminated, *I then asked Mr. Hargen-Rodríguez if he wished to open a personal investment account for the purpose of transferring the assets from the Hargen Trust's investment account once the Trust was terminated, and he said "ok."*

17.  Accordingly, I began the process to open a personal investment account, number XF-XXX94, with UBS Financial for Mr. Hargen-Rodríguez.  (*See* Ex. A, Dkt. 14-1; Ex. B, Email of June 7, 2016, from Magda T. Broco to Mr. Hargen-Rodríguez.)

18.  I informed Mr. Hargen-Rodríguez that the account agreement had been emailed to him, and that he needed to sign and return it to me.  (*See* Ex. B, Email of June 7, 2016, from Magda T. Broco to Mr. Hargen-Rodríguez.)

19.  *I never told Mr. Hargen-Rodríguez that he needed to open a personal investment account with UBS Financial or UBS Financial Services Incorporated of Puerto Rico as a requirement for receiving the distribution of the assets of the Hargen Trust.*

20.  *I did not tell Mr. Hargen-Rodríguez that, in order to receive the distribution of the Hargen Trust's assets, he had no choice but to open a personal investment account with UBS and execute a Client Relationship Agreement.*

21.  *I also did not tell Mr. Hargen-Rodríguez that, in order to receive the distribution of the Hargen Trust's assets, he had to waive any rights or to agree to arbitration.*

(Declaration of Magda T. Broco, attached hereto as Exhibit ("Ex.") 1, at ¶¶ 14-21; emphasis

added.)

---

[3] Magda T. Broco is an Investment Associate with UBS Financial who has serviced the Hargen Trust's investment account since 2000, and has further assisted Hargen-Rodríguez and UBS Trust in the implementation of investment decisions concerning the Trust's investments since Hargen-Rodríguez became the Trust's beneficiary.  (*See* Declaration of Magda T. Broco, attached hereto as Ex. 1, at ¶¶ 1, 5-9, 11-13.)

But even if Hargen-Rodríguez's statements were given any credit, they are still insufficient as a matter of law to establish procedural unconscionability.  Even assuming, for the sake of the argument, that the Client Relationship Agreement had been offered to Hargen-Rodríguez on a "take it or leave it" basis, and that UBS had refused to negotiate the arbitration provision, this would be insufficient under New York law to render the provision procedurally unconscionable.  *See, e.g.*, In re Apollo Air Passenger Computer Reservation System (CRS), 720 F. Supp. 1061, 1065 (S.D.N.Y. 1989) (holding that although the contract was presented "on a take it or leave it basis, that alone does not render the contract unconscionable"); Anonymous v. JP Morgan Chase & Co., No. 05 CIV. 2442 (JGK), 2005 WL 2861589, at *6 (S.D.N.Y. Oct. 31, 2005) (same).  Moreover, "[t]he procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice.  The focus is on such matters as the size and commercial setting of the transaction …, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power…." Gillman, 534 N.E.2d, at 828 (internal citations omitted).  Here, these factors weigh in favor of procedural reasonableness.

Mr. Hargen-Rodríguez is a business executive with "a good understanding of financial markets and market investments," as he represented for opening his new account.  (*See* Ex. 1, at ¶ 10.)  He opened the account a month before filing this lawsuit.  His exchange with Broco about opening the account took place over the telephone, so he cannot claim that he was in an uncomfortable or pressure-inducing setting.  In fact, he did not even sign the Client Relationship Agreement in Broco's office.  (*See* Ex. 1, at ¶ 26.)  Hargen-Rodríguez does not state in his affidavit that he informed Broco that he wished to have the Trust's assets transferred to a

financial institution other than UBS, or that he asked Broco about alternatives for the distribution of the Trust's assets. The evidence is to the contrary. As Broco states:

> 22. ***Mr. Hargen-Rodríguez did not tell me or suggest to me that he wished to have the Trust's assets transferred to an account at another financial institution.***
>
> 23. Mr. Hargen-Rodríguez did not mention to me that he had a personal investment account with Morgan Stanley.
>
> 24. ***Mr. Hargen-Rodríguez did not ask me about alternatives for transferring the Hargen Trust's assets upon distribution.***
>
> 25. In fact, ***approximately 10 days after*** the Client Relationship Agreement for Mr. Hargen-Rodríguez's new personal investment account was sent to him, ***he returned it to me signed*** on June 17, 2015. (*See* Ex. A, Dkt. 14-1, at p. 88 of 123.)

(Ex. 1, at ¶¶ 22-25; emphasis added.)

Hargen-Rodríguez does not claim that he was unaware of the Client Relationship Agreement's arbitration provision or that he did not read it before signing the agreement. And he cannot. The Client Relationship Agreement conspicuously advises that it includes an arbitration provision. (*See* Ex. 1-A, at p. 88 of 123.) Hargen-Rodríguez cannot – and in fact does not – claim that he did not have time to review the Client Relationship Agreement or to discuss it with his attorneys. He signed the agreement 10 days after receiving it. (*See* Ex. 1, at ¶ 25.)[4]

Further, Hargen-Rodríguez had been a party to a prior litigation where UBS attempted to compel arbitration. (*See* Hodes v. UBS Trust Company of Puerto Rico, Civil No. 14-1880,

---

[4] Plaintiffs claim that a certain withholding warning in the email sent to Hargen-Rodríguez with the Client Relationship Agreement "serve[d] [as] a substantial deterrent to reject [it]…." (Dkt. 22, at p. 12.) This is not so. The email sent to Hargen-Rodríguez was a standard one. It "asked Mr. Hargen-Rodríguez to sign and return the Signature Page and other forms by July 6, 2016, explaining that if these were not received by then, 'the Internal Revenue Service (IRS) require[d] [UBS] to **withhold** a percentage of all reportable dividends, interest, sale proceeds and other income paid to your account[,]' and that, although [t]he percentage change[d] periodically, it ranged historically 'from **28 percent** to **31 percent**'. This is a standard requirement of federal law for all new accounts, not only for Mr. Hargen-Rodríguez's." (Ex. 1, at ¶ 27; emphasis in original.) More importantly, "Mr. Hargen-Rodríguez faced no risk of withholding because he had not yet transferred any assets to his account, and no dividends, interest, sale proceeds or other income were being paid to his account." (*Id.*)

Dkts. 47 & 74.)  In that case, Hargen-Rodríguez was represented by the same attorneys representing him here.  Yet, neither he nor his attorneys objected to the Client Relationship Agreement's arbitration provision when Hargen-Rodríguez voluntarily chose to open his personal account.  Notably, Hargen-Rodríguez does not claim that he tried to negotiate the elimination or limitation in scope of the arbitration provision in the Client Relationship Agreement and UBS refused to do so.  He did not.  As Broco explains, Hargen-Rodríguez never contacted her "to ask any questions about any of the terms or conditions of the Client Relationship Agreement."  (*Id*. at ¶ 31.)  "[W]hen he returned the executed agreement to [Broco], he did not ask any questions or make any comments concerning the arbitration provision or any of the other terms or conditions of the Client Relationship Agreement."  (*Id*. at ¶ 32.)  In fact, in his communications to Broco after signing the Client Relationship Agreement, Hargen-Rodríguez "***never***: (a) refused to use or indicated that he would not use his new account, (b) stated anything about the arbitration provision or any other term or condition of the Client Relationship Agreement; (c) mentioned that he wished to have the Trust's assets transferred to an account at another financial institution; (d) mentioned that he had a personal investment account with Morgan Stanley; or (e) asked about alternatives for transferring the Hargen Trust's assets upon distribution."  (*Id*. at 43; emphasis added.)

The foregoing circumstances surrounding the formation and execution of the Client Relationship Agreement show that Hargen-Rodríguez signed it voluntarily.  His current litigation position only demonstrates that he either had a change of heart upon filing this case.  In any case, these circumstances defeat any argument of procedural unconscionability. [5]  *See* <u>McGowan &</u>

---

[5] The correspondence included with Plaintiffs' opposition does not show otherwise.  First, this correspondence does not state anywhere that opening an account with UBS is a requirement for distributing the Hargen Trust's assets to Hargen-Rodríguez.  (*See* Dkts. 22-4 & 22-13.)  Second, in the letter dated May 31, 2016, UBS Trust's counsel asked Hargen-Rodríguez's counsel for Hargen-Rodríguez's instructions for transferring the Trust's assets.  (*See* Dkt. 22-

Co. v. Bogan, 93 F. Supp. 3d 624, 640–41 (S.D. Tex. 2015) (finding that challenging party failed to meet his burden of establishing that the arbitration agreement was procedurally unconscionable because there was "no evidence that [he] was unable to ask questions, negotiate terms, or have an attorney review the Agreement"); Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 119–20 (2d Cir. 2010) (affirming the district court's finding that the agreement was not unconscionable even if the party challenging it "did not understand the arbitration agreement at the time she signed it," because she "could have asked questions about [the agreement] and could have taken the employment documents home to study them and she could have consulted a lawyer if she chose") (internal quotation marks and footnote omitted); Nayal v. HIP Network Servs. IPA, Inc., 620 F. Supp. 2d 566, 572–73 (S.D.N.Y. 2009) (claim based on allegation of unconscionable contract of adhesion rejected in part because plaintiff was "an educated doctor engaging in a business transaction – a far cry from the prototypical 'uneducated' and 'needy' individual for whom the unconscionability doctrine was fashioned").[6]

---

4.)  This request was not answered *until almost five months after* Hargen-Rodríguez voluntarily opened his personal investment account with UBS Financial.  (*See* Dkt. 22-12.)

[6] The result would be the same under Puerto Rico law.  *See, e.g.*, Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 12 (1st Cir. 2007) ("Wrongdoing or bad faith is never assumed but, rather, must be proved affirmatively by the party who challenges an agreement based on an absence of consent. … And when examining efforts to invalidate consent, Puerto Rico courts consider the education, social background, economic status, and business experience of the challenger.  In this instance, the appellants are reasonably well-educated, experienced individuals, all of whom have held responsible positions in the private sector."); Rodríguez-Bird v. Santander Sec. Corp., 2010 WL 2541708, at *3 (D.P.R. June 17, 2010) ("Plaintiff argues that the arbitration clause is unconscionable and, thus, invalid.  Plaintiff's argument boils down to a contention that enforcing an arbitration agreement in light of potential fraud in a larger contract is unconscionable.  But Plaintiff has not pointed to, and we have not found, any authority for the proposition that unconscionability may release a party from contract under Puerto Rico law.  Rather, Plaintiff argues that such considerations are encompassed in the civil law's background requirement of good faith in contracting.  Considering that the arbitration clause must be viewed independently from the rest of the contract, and any fraud therein, we find no bad faith in the Defendants' use of this boilerplate arbitration agreement when opening new accounts. It is a standard agreement that is accepted in numerous transactions throughout our daily lives.").

c.  <u>The UBS Defendants Are Entitled to an Evidentiary Hearing in the Event that any Doubt Exists as to the Arbitration Provision's Conscionability.</u>

It is clear from the preceding discussion that the Client Relationship Agreement's arbitration provision is neither procedurally nor substantively unconscionable.  Therefore, Plaintiffs should be compelled to arbitrate under Client Relationship Agreement for the reasons stated in the Motion to Compel.  (*See* Dkt. 14, at pp. 12-17.)  If, however, the Court finds that the issue is not clear, then the UBS Defendants are entitled to an evidentiary hearing, and accordingly request one in that event.  Although generally "[w]hether a contract or a clause thereof is unconscionable or not is for the court to decide[,] . . . [t]he rule is that if it appears from the record before the court that unconscionability may exist, and the issue is not free from doubt, then the court ***must hold a hearing where the parties may present evidence*** with regard to the circumstances of the signing of the contract, and the disputed terms' setting, purpose and effect."  <u>State v. Wolowitz</u>, 468 N.Y.S.2d 131, 145–46 (1983) (internal citations omitted; emphasis added).

## 2.  Plaintiffs Are Bound to Arbitrate under the Account Agreement's Arbitration Provision.[7]

Plaintiffs do not quarrel with the fact that non-signatories can be compelled to arbitrate under equitable principles.  (*See* Dkt. 22, at pp. 15-16.)  Their argument is that these principles do not apply to their circumstances, and therefore they cannot be compelled to arbitrate under the Account Agreement's arbitration provision.  (*See* Dkt. 22, at pp. 18-20.)  Plaintiffs try to support this argument with inapplicable case law or with specious distinctions of some of the authorities cited in the Motion to Compel.

---

[7] "Account Agreement" is used here as defined in the Motion to Compel.  (*See* Dkt. 14, at p. 12 n.6.)

First, Plaintiffs refer to the opinion in <u>Cabrera-Morales v. UBS Trust Company of Puerto Rico</u>, 769 F. Supp. 2d 67 (D.P.R. 2011). This opinion is inapplicable under the circumstance of this case, and this is why the UBS Defendants did not mention it in their Motion to Compel. In <u>Cabrera-Morales</u>, the Court declined to compel arbitration "[g]iven that the [case] center[ed] around [UBS Trust's] conduct as trustee, and not around UBS Financial's investment conduct…." *Id.* at 71. UBS Financial and UBS-PR were not joined as defendants in that case. Here, however, Plaintiffs ***did*** join UBS Financial ***and*** UBS-PR as defendants, and the Complaint's allegations ***do center*** on the UBS Defendants' purported investment conduct, which allegedly originated from a "scheme designed and implemented … to illegally collect revenue based on material representations and omissions in the fraudulent sale of securities." (Compl. ¶ 4.99.) Also, contrary to the plaintiff in <u>Cabrera-Morales</u>, Plaintiffs here have (1) asserted claims that necessarily implicate the Account Agreement, (2) exploited the Account Agreement, and (3) accepted the benefits of the Account Agreement.[8] This case is similar to <u>Barros v. UBS Trust Co. of Puerto Rico</u>, 915 F. Supp. 2d 226 (2012), where, like here, the plaintiff was a beneficiary under a trust of which UBS Trust was the trustee, and also had a personal investment account with UBS Financial that was subject to arbitration. UBS Trust moved to compel arbitration and the plaintiff opposed pressing, among other arguments, that her claims were

---

[8] First, it is inescapable that the Account Agreement is the underlying basis for their claims against the UBS Defendants. The allegations in the Complaint all concern controversies related to the Hargen Trust's investments in account with UBS, and the purported fraudulent scheme allegedly devised and implemented jointly by the UBS Defendants. The Trust's investments in account with UBS are governed by the Account Agreement. These investments were purchased and maintained for the benefit of the Hargen Trust's beneficiaries. If UBS Trust had not purchased the investments, Plaintiffs would not have any claims against the UBS Defendants. The Account Agreement is necessarily the underlying basis of the claims because without it, UBS would not have been able to sell the investments to the Hargen Trust and UBS Trust would not have been able to purchase them for the benefit of the Trust's beneficiaries. Second, during the life of the Account Agreement, Hargen-Rodríguez has exploited the Account Agreement by seeking investment advice from UBS, and by making investment decisions with respect to the Trust's assets in account with UBS and subject to the Account Agreement. (*See* Dkt. 14-1, at ¶ 26; Dkt. 14-5.) Third, as of September 16, 2016, Plaintiffs had accepted a total of $111,113.26 in distributions of income generated by Trust's investments in account with UBS. (*See* Dkt. 14-1, at ¶ 25.)

strictly based on UBS Trust's alleged breach of fiduciary duty.  The Court nevertheless compelled arbitration.  *See id*. at 231.  The same result is warranted in this case.

Second, Plaintiffs try to distinguish Edward F. Jones & Co., LP v. Ventura, 907 So.2d 1035 (Ala. 2005) on the basis that the plaintiff there sued only the brokerage firms and not a trustee.  This is irrelevant here.  Even if Plaintiffs' claims against UBS Trust were not deemed arbitrable, they would be stayed pending arbitration because they are intertwined with Plaintiffs' claims against UBS-PR and UBS Financial.  Also of no consequence is Plaintiffs' effort to distinguish Merrill Lynch, Pierce, Fenner & Smith v. Eddings, 838 S.W.2d 874 (Tex. App.-Waco 1992) on the basis that the deed of trust in that case expressly empowered the trustee to enter into arbitration agreements, unlike the Deed of the Hargen Trust.  The Hargen Trust's Deed gives UBS Trust broad powers, including the power to open investment accounts.  Because the Deed of Trust does not carve out investment accounts with governing agreements that include arbitration provisions, it is obvious that UBS Trust is empowered to open an investment account for the benefit of the Trust's beneficial owners *regardless* that the account's governing documents may provide for arbitration.

Third, the fact that the Account Agreement does not specifically mention Hargen-Rodríguez does not shield him from being compelled to arbitrate as a third-party beneficiary.  Through the Account Agreement, UBS Trust and UBS Financial intended to confer a benefit upon Hargen-Rodríguez as a beneficiary of the Trust.  The sole purpose for UBS Trust and UBS Financial to enter into the Account Agreement was to confer a benefit upon the Hargen Trust's beneficial owners, including Hargen-Rodríguez.[9]  As beneficiary, Hargen-Rodríguez would

---

[9] Under Puerto Rico law, a trust is established for the benefit of the grantor and any other beneficiaries.  *See* Civil Code, art. 834, P.R. Laws Ann. tit. 31, § 2541 ("A trust … is an irrevocable mandate whereby certain property is transferred to a person, named the trustee …, in order that he may dispose of it as directed by the party who transfers the property, named constituent …, for his own benefit or for the benefit of a third party, named the

benefit – and indeed has benefitted – from the Account Agreement and the income received, which has been possible only because of the investments made pursuant to the Account Agreement.  UBS Trust opened the Resource Management Account and executed the Account Agreement in its role as Trustee of the Hargen Trust, with the understanding and objective that any benefit from the relationship would inure to the benefit of the Trust's beneficial owners.  As of September 16, 2016, Hargen-Rodríguez had received $111,113.26 in income from those investments.  Hargen-Rodríguez is clearly a third-party beneficiary to the Account Agreement.

**3.     The UBS Defendants Did Not Waive Arbitration.**

Plaintiffs next argue that the UBS Defendants waived the right to arbitration of the claims raised in the Complaint because they have allegedly engaged in actions which are inconsistent with arbitration.  This argument is unavailing.

Under New York law, significant judicial action must have occurred before waiver is found.  *See* Bridas Sociedad Nonima Petrolera Indus. Y Comercial v. Int'l Standard Elec. Corp., 490 N.Y.S.2d 711, 718 (Sup. Ct. 1985).  "Not every foray into the courthouse effects a waiver of the right to arbitrate."  Sherrill v. Grayco Bldrs., 64 N.Y.2d 261, 273 (1985).  "In order for a party to waive such a right, it must be shown that that party participated in the action to a degree which would manifest acceptance of the courts as the proper forum."  Two Cent. Tower Food, Inc. v. Pelligrino, 622 N.Y.S.2d 701, 702 (1995).

Here, Plaintiffs do not rely on the UBS Defendants' actions in this case.  Rather, they claim that the UBS Defendants engaged in conduct inconsistent with arbitration in two prior separate state cases.  They cannot rely on any actions within this case simply because the UBS

---

beneficiary…."); Law No. 2012-219, sec. 1.1, 32 L.P.R.A. § 3351 ("The trust is an autonomous estate resulting from the act through which the grantor transmits property or rights, and that shall be administered by the trustee *for the benefit of the beneficiary or for a specific purpose*….") (emphasis added) (certified English translation is attached hereto as Exhibit ("Ex.") 2).  Plaintiffs seem to ignore this.  (*See* Dkt. 22, at p. 3 n.4.)

Defendants asserted their right to arbitration as their first response to the Complaint. Even if the UBS Defendants' conduct in other proceedings could be taken into account now, such conduct was not inconsistent with the right to arbitration.

In the First State Case (as defined in the opposition), UBS Trust sought a declaratory judgment as to how the Hargen Trust's assets should be distributed. This issue only required the court to interpret the Deed of Trust and determine if either Hargen or Nellie Sanchez were at that time entitled to receive the Trust's income and corpus. That case did not involve any of the claims being asserted here, and therefore is not a basis to find waiver. *See* Erly Industries v. M/V CHADA NAREE, 2000 WL 1029002, at *1 (5th Cir. July 6, 2000) (unpublished) (finding that the filing of a declaratory judgment proceeding was insufficient to constitute waiver of arbitration, "because the declaratory judgment action was not commenced to resolve a specific claim that would otherwise be arbitrated"). Moreover, ***neither UBS Financial nor UBS-PR were parties to that case***. Therefore, neither of them can be said to have waived the right to arbitration because of it.

The Second State Case (as defined in the opposition) involved an injunction being sought against the UBS Defendants. In that case, the UBS Defendants merely defended themselves from the requested injunction and informally provided some documents to the plaintiffs. This is insufficient to establish an acceptance of the judicial forum or a waiver of arbitration *See* BR Ambulance Service, Inc. v. Nationwide Nassau Ambulance, 542 N.Y.S.2d 21, 22-23 (1989) ("[W]e are unable to conclude that [defendant], merely by interposing an answer containing affirmative defenses and by submitting affidavits in opposition to the plaintiffs' previous motion for injunctive relief, affirmatively accepted the judicial forum and waived his right to invoke the arbitration clause contained in his employment contract."). Additionally, because that case was

dismissed for lack of standing, (*see* Dkt. 1, at ¶ 4.116), the court was never required to hear the merits of any of the claims or defenses raised in the case.

It is also important to note that the issues involved in both state cases differ from those involved in this case.  Here, Plaintiffs seek to recover "losses and damages caused by UBS Defendants for illegal acts constituting violations of federal and state law, including securities fraud and violations of the Racketeer, Influenced and Corrupt Organization ("RICO") Act," (Dkt. 1 at ¶ 1.2), as well as "damages caused by UBS Trust for breach of its fiduciary duties towards Hargen-Rodríguez, and recovery of damages in the form of attorney's fees incurred in prior litigation due to wrongful involvement in litigation," (Dkt. 1 at ¶ 1.3).  The RICO, securities fraud, breach of contract and attorney fees claims were not asserted in the state cases, and therefore preclude a finding of waiver.  *See* Denihan v. Denihan, 313 N.E.2d 759, 760-61 (N.Y. 1974) ("As to the claims sought to be redressed in judicial proceedings, there can be no question but that the respondent has waived his right to arbitrate.  But as to claims separate and distinct, no waiver of arbitration may be implied from the fact that resort has been made to the courts on other claims arising under a common agreement which remains in full force and effect.").

Plaintiffs' additional claims for breach of fiduciary duties by UBS Trust are different than those raised by state plaintiff Nellie Sánchez Carmona ("Sánchez") in the Second State Case. There, Sánchez sought an injunction precluding UBS Trust from prospectively reinvesting the Trust's income in allegedly volatile investments.  Her damages claims were based on the Trust's income that was not paid to her during the years after the Hargen Trust's grantor's death.  (*See, e.g.*, Hodes v. UBS Trust Company of Puerto Rico, Civil No. 14-1880, Dkt. 75-5.)  Here, on the other hand, Plaintiffs seek damages based on the UBS Defendants' alleged investment conduct.

No issues related to UBS Trust's fiduciary duties were resolved on the merits in either of the state cases. The First State Case was dismissed after the UBS Trust reached a settlement with Sánchez's heirs, and Hargen-Rodríguez acquiesced to the dismissal of the case. The Second State Case was dismissed on jurisdictional grounds for lack of standing.

The passage of time is also not a factor indicative of waiver. In this proceeding, the UBS Defendants raised their right to arbitration as their first response to the Complaint. Plaintiffs' argument that the UBS Defendants waited over three years before first raising the issue of arbitration is simply wrong. Plaintiffs conveniently overlook that in the prior federal case filed by Sánchez's heirs, the UBS Defendants promptly asserted their right to arbitration in their first appearance.[10] For these reasons, the UBS Defendants have not waived their right to arbitration of Plaintiffs' claims in this case.[11]

**4.    Any Non-Arbitrable Claims Must Be Stayed Pending Arbitration.**

Plaintiffs finally press that any non-arbitrable claims should be allowed to proceed before the Court because "[t]his is simply a common sense approach." (Dkt. 22, at p. 30.) But this is not the applicable standard. In determining whether to issue a discretionary stay, courts often ask "(1) whether there are common issues in the arbitration and the court proceeding, and (2) if so, whether those issues will be finally determined by the arbitration." Am. Shipping Line v. Massan Shipping Indus., 885 F. Supp. 499, 502 (S.D.N.Y.1995). This standard is met here.

---

[10] The Court can take judicial notice of the proceedings in Hodes-Branly v. UBS Trust Company of Puerto Rico, Case No. 14-1880 (CCC).

[11] The same result would be reached under Puerto Rico law. The Puerto Rico Supreme Court expressly adopted the analysis employed by the New York Courts in determining whether the right to arbitration has been waived. In H.R., Inc. v. Vissepó & Diez Constr., 190 P.R. Dec. 597 (2014), the Puerto Rico Supreme Court specifically held that waiver is found only when a litigant engages in affirmative litigation, as opposed to defensive litigation. *See id.* at 611-12 & 614 ("[A] defendant does not waive its right to arbitration when it answers the complaint or, even, when it responds to plaintiff's discovery requests, as long as it does so defensively.") (our translation).

As demonstrated in the Motion to Compel, the claims against UBS Trust are inseparable from those against UBS Financial and UBS PR, as none of the factual allegations of the Complaint refers to actions taken by UBS Trust independently of the other UBS Defendants. (*See, e.g.*, Compl. ¶¶ 4.32, 4.35, 4.38, 4.43, 4.54, 4.55, 4.65, 4.67, 4.69, 4.97-4.99, 4.131.)  A decision on any claims against UBS Trust would necessarily implicate the claims against UBS Financial and UBS-PR in arbitration.  "The First Circuit has held that when plaintiff's claims are interrelated and arbitration could serve to 'clarify and perhaps even simplify the remaining issues which must be litigated,' a stay of both the arbitrable and the non-arbitrable claims is within the trial court's sound discretion."  Colón de Sánchez v. Morgan Stanley Dean Witter, 376 F. Supp. 2d 132, 137 (D.P.R. 2005).  A stay would result in judicial economy, given that the resolution of the arbitrable claims could simplify resolution of any remaining non-arbitrable claims.

The claims of Hargen-Rodríguez's wife, co-plaintiff María L. Amaral-Bibiloni ("Amaral-Bibiloni"), and of the conjugal partnership among them (the "Conjugal Partnership") should also be stayed because they are inseparable from those raised by Hargen-Rodríguez.  Amaral-Bibiloni is not raising any claims that are independent of Hargen-Rodríguez's.  She is claiming for the "rents" allegedly due from the Trust's assets due to Hargen-Rodríguez, which is common property, and for the attorney's fees unnecessarily incurred in defending themselves from the state cases and the prior federal case, which were presumably paid from common funds.  (*See* Compl. at ¶¶ 4.89, 5.50.)  If Hargen-Rodríguez is required to arbitrate these claims, their resolution would effectively resolve Amaral-Bibiloni's.  Furthermore, because Amaral-Bibiloni's claims clearly involve property belonging to the Conjugal Partnership, and not to her privately, any action taken by Hargen-Rodríguez on behalf of the partnership will undoubtedly result in a benefit for Amaral-Bibiloni.  Under Puerto Rico law, either of the spouses may represent the

Conjugal Partnership in a legal proceeding. *See* P.R. Laws Ann., tit.31, § 286 ("Save as provided in § 284 of this title, either of the spouses may legally represent the conjugal community. Any unilateral administration act of one of the spouses shall bind the community property and shall be presumed valid to all legal effects.").

## CONCLUSION

For the foregoing reasons, and in view of the strong policy favoring arbitration, Plaintiffs should be compelled to arbitrate all of the claims asserted in the Complaint. Alternatively, even if not all of the parties are entitled or bound to arbitration, the proceedings should nevertheless be stayed pending arbitration with the remaining parties.

WHEREFORE, the UBS Defendants respectfully request this Honorable Court to:

(a) Compel arbitration and dismiss the Complaint in its entirety or, alternatively, if not all of the parties are entitled or bound to arbitration, the proceedings should nevertheless be stayed pending arbitration with the remaining parties.

(b) Stay all proceedings pending adjudication of the Motion to Compel.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico this 1st day of December, 2016.

**MCCONNELL VALDÉS LLC**
270 Muñoz Rivera Avenue
P.O. Box 364225
San Juan, Puerto Rico 00936-4225
Tel: (787) 250-5813
Fax: (787) 759-8282

s/ Eduardo A. Zayas-Marxuach
Eduardo A. Zayas-Marxuach
USDC-PR No. 216112
ezm@mcvpr.com

s/ Alejandro J. Cepeda Díaz
Alejandro J. Cepeda Díaz
USDC-PR No. 222110
ajc@mcvpr.com

<u>**CERTIFICATE OF SERVICE**</u>

It is hereby certified that on this same date this document has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

DATED: December 1, 2016.

<u>s/ Eduardo A. Zayas-Marxuach</u>
Eduardo A. Zayas-Marxuach
USDC-PR No. 216112
ezm@mcvpr.com