## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PAUL T. HARGEN-RODRÍGUEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UBS TRUST COMPANY OF PUERTO RICO, et al., <br><br> Defendants, | Civil No.: 16-2340 <br><br> Re: <br><br> Racketeer, Influenced and Corrupt Organization Act, Securities Fraud, Breach of Fiduciary Duties, Declaratory Judgment, Breach of Contract, Damages. <br><br> Jury Trial Demanded |

**SUR-REPLY TO "JOINT MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS" (DOCKET NO. 14)**

TO THE HONORABLE COURT:

COME NOW plaintiffs Paul T. Hargen-Rodríguez ("Hargen"), María L. Amaral-Biblioni ("Amaral"), and their conjugal partnership ("CP") (jointly "Plaintiffs"), through the undersigned attorneys, and respectfully STATE, ALLEGE and PRAY as follows:

## I. Introduction

The most notable feature of UBS Defendants' "Joint Reply in Support of Joint Motion to Compel Arbitration and to Stay Proceedings" ("Reply"), Doc. No. 35, filed by UBS Trust Company of Puerto Rico ("UBS Trust"), UBS Financial Services Incorporated of Puerto Rico ("UBS PR") and UBS Financial Services Inc. ("UBS Financial") (jointly "UBS Defendants"), filed in response to Plaintiffs' "Opposition to 'Joint Motion to Compel Arbitration and to Stay Proceedings'" ("Opposition"), is their complete inability to identify a single meaningful choice given or available to Hargen to obtain distribution of the assets held in the Hargen Trust.[1]

All in all, Plaintiffs respectfully submit that UBS Defendants' failed to overcome the myriad of hurdles present to attach all claims and all parties to mandatory arbitration. Their "Joint Motion to Compel Arbitration and to Stay Proceedings" ("Motion to Compel") rests on application of an unconscionable arbitration provision not signed by all parties and another which is not signed by any of the Plaintiffs, both of which fail to attach to all claims. Simply, UBS Defendants failed to piece together the arbitrability puzzle attempted in the Motion to Compel.

## II. Arbitration under the Client Relationship Agreement is unconscionable

UBS Defendants support their Opposition on the following: "The unconscionability determination 'generally requires a showing that the contract was both procedurally and substantively unconscionable when made–i.e., <u>some showing of an absence of meaningful choice</u> on the part of one of the parties together with contract terms which are unreasonable favorable to the

---
[1] Defined terms in this Sur-Reply are either defined herein or defined in Plaintiffs' Opposition.

1

other party.'" Reply at 3-4, citing Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10 (1988) (emphasis ours).[2] However, not mentioned by UBS Defendants, "procedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." Simar Holding Corp. v. GSC, 928 N.Y.S.2d 592, 595 (2011), citing State of New York v. Wolowitz, 468 N.Y.S.2d 131, 145 (1983) (emphasis ours).

Although UBS Defendants know that procedural unconscionability rests on the existence of a meaningful choice, throughout their Reply, UBS Defendants failed to point out a single meaningful choice provided to Hargen to distribute the assets in the Hargen Trust that did not entail an attempt to bind him into arbitration. The "choice" given to Hargen by the UBS Defendants is waiving his right to a judicial forum or waiving his right to the assets in the Hargen Trust, a property interest. This is no meaningful choice at all.

The declaration submitted by UBS Defendants in their Reply does not aid their contention. In fact, if anything, it proves that in three attempts UBS Defendants did not give Hargen a meaningful choice to obtain distribution of the assets held in trust without attempting to bind him to arbitration.

The first attempt was when UBS Defendants notified Hargen a proposed deed of termination, which was allegedly "customary". See Doc. No. 22 at 7, ¶ 26, Ex. 4-4a. This agreement was rejected on its face on the basis of the arbitration provision. See Doc. No. 22 at 8, ¶ 27, Ex. 5.

The second attempt was made mere days later, early in June 2016, as declared by UBS PR's representative, Doc. No. 35-1 at 3, ¶ 14, when UBS PR was allegedly informed by UBS Trust of a communication sent to Hargen allegedly "concerning the termination of the Hargen Trust." Id.

---

[2] By making reference to New York law, UBS Defendants attempt to give the impression of a more stringent standard for unconscionability. However, the standard is the same as the one referenced by Plaintiffs in their Opposition: unconscionability requires a determination that the agreement was procedurally and substantially unconscionable. Thus, the case law cited by Plaintiffs in their Opposition is clearly relevant.

(emphasis ours). UBS PR's corporate representative informed Hargen that a personal investment account was a necessary pre-requisite to transfer all of the assets held in trust from UBS Trust's account to him. Doc. No. 22-1 at 4, ¶ 15.[3] The Hargen Trust's assets include stock in UBS PR closed-end funds. Doc. No. 1 at 8, ¶ 4.31. These are proprietary to UBS PR and UBS Financial and are not transferable to a brokerage account held outside UBS PR. In other words, UBS Trust's prior investments decisions as to the Hargen Trust in itself create an obstacle to performing distribution that force beneficiaries, like Hargen, to a UBS PR brokerage account and therefore to arbitration of any claims, including those against UBS Trust as trustee.

Hargen's statement of fact that a personal investment account was needed was confirmed by UBS Defendants' third attempt, when five (5) months later UBS Defendants stated, in writing on November 11, 2016, that a transfer of the assets in the Hargen Trust would not be possible absent a UBS PR brokerage account held by Hargen. Doc. No. 22-13.

The above conduct goes beyond simple "take it or leave it" contracts of adhesion. The lack of options given to Hargen by UBS Defendants meant that "leaving it" entailed forfeiting his proprietary right to distribution of the assets. Accordingly, Hargen's background is irrelevant since he has simply been left with no meaningful choice whatsoever to obtain distribution of the assets in the Hargen Trust without waiving entering into arbitration. UBS Defendants attempt to draw attention to what Hargen allegedly did not do in terms of avoiding the CRA. However, even assuming that Hargen would have performed all available efforts to avoid the CRA, since UBS Trust's own prior investments decisions as to the Hargen Trust force beneficiaries, like Hargen, to a UBS PR brokerage account and therefore to arbitration of any claims, including those against UBS

---

[3] UBS Defendants misconstrue Hargen's statement in their Reply. Hargen did not state that he was informed that "he had no choice" or that "he had to waive any rights or to agree to arbitration". Doc. 35-1 at 4, ¶¶ 20-21. Hargen stated that he was not given a different alternative or choice. Doc. No. 22-1 at 4, ¶ 15.

Trust as trustee, what Hargen could have done is irrelevant; particularly considering that based on UBS Defendants' own statements any efforts would have been meaningless. Doc. No. 22-13.

To conclude, UBS Defendants failed to identify a single meaningful choice provided to Hargen to receive distribution of the assets held in the Hargen Trust without attempting to bind him to arbitration. This absolute and reiterated lack of any meaningful choice available to Hargen makes the CRA procedurally unconscionable.

As it relates to substantive unconscionability, as stated and conveniently ignored by UBS Defendants in their Reply, "the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." Simar, 928 N.Y.S.2d at 595. In view of the proven fact that UBS Defendants never provided Hargen a single meaningful choice and UBS Defendants failed to point out in their Reply a single meaningful choice provided to Hargen, the requirement for a substantive showing of unconscionability is lessened. Id.

UBS Defendants argue that substantive unconscionability entails "an analysis of the substance of the bargain." Doc. No. 35 at 4, citing Gillman, 73 N.Y.2d at 12. However, omitted by UBS Defendants, substance of the bargain is defined as "[a] determination of the commercial reasonableness of the terms . . . requires an examination of Chase's obligations under the letter of credit." Gillman, 73 N.Y.2d at 12. Thus, in the instant case, a determination of the commercial reasonableness of requiring arbitration entails an examination of UBS Defendants' obligations under the Deed of Trust. In Gillman, the court concluded that the security agreement was commercially reasonable "to provide the issuing bank with the means of protecting itself from potential loss." Id. at 13. However, arbitration in the CRA does absolutely nothing to protect a specific loss or risk posed to UBS Defendants from discharging their duties under the Deed of Trust.

The only argument raised by UBS Defendants in terms of the reasonableness of the arbitration provision in the CRA is the policy in favor of arbitration in view of the widespread use of arbitration agreements. UBS Defendants' logic is erred.

First, reliance in such policy is inapposite since it does not apply to situations like this when a court determines whether an arbitration agreement exists. See, e.g., California Fina Group, Inc. v. Herrin, 379 F.3d 311, 316 n.6 (9th Cir. 2004). Second, the fact that arbitration agreements are being used widespread does not mean that the arbitration provision in the CRA is commercially reasonable in the context of this case.

On the one hand, the faulty logic in UBS Defendants' argument would render all or most arbitration provisions immune to an unconscionability defense because of the policy in favor of arbitration. Such conclusion is simply legally and logically unsound. Also, Hargen is not arguing that the arbitration provision in the CRA is inherently unconscionable. He argues that it in the context of the instant case where UBS Defendants are using assets held in trust as bait to attempt to bind Hargen into arbitration.

On the other, UBS Defendants point to a law review article to, surprisingly, try to establish that arbitration in the financial industry is commercially reasonable because it is allegedly aimed to protect investors. Doc. No. 35 at 6. Unsurprisingly, the citation used by UBS Defendants is out of context. The portion cited by UBS Defendants is the author's opinion of what the Financial Industry Regulatory Authority ("FINRA") ought to do in promoting its area of dispute resolution. Nevertheless, the author establishes as a fact that "FINRA's public pronouncements in the area of dispute resolution-- often in the context of fending off criticism of its arbitration procedures-- focus on the efficiencies and level playing field of securities arbitration, not on its investor protection characteristics. Likewise, when FINRA broadly promotes its investor protection efforts, it does not

5

include arbitration." Jill Gross, *The Historical Basis of Securities Arbitration As an Investor Protection Mechanism*, 2016 J. Disp. Resol. 171, 185 (2016) (citations omitted) (emphasis ours). Therefore, not even FINRA promotes arbitration as having a role an investor protection.

To conclude, the strong showing made by Plaintiffs as to procedural unconscionability, from the absolute absence of a meaningful choice, significantly lower the required showing of substantive unconscionability. Also, in the context of this case, UBS Defendants failed to identify a single specific commercial reason that would make the arbitration in the CRA reasonable in the context of UBS Defendants obligations under the Deed of Trust to distribute the assets held in the Hargen Trust. In view of this, Plaintiffs respectfully submit that the arbitration provision in the CRA must be held unconscionable because it is both procedurally and substantively unconscionable. This will allow Hargen to obtain distribution of the assets without waiving his rights under the Seventh Amendment.

### III. The Account Application does not compel Plaintiffs as non-signatories to arbitration

UBS Defendants admit that, as it relates to the Account Application, their Motion to Compel is based exclusively on exceptions to the general rule that arbitration only applies to signatories. Doc. No. 14 at 25. As exceptions, these must be construed narrowly, especially when considering that "a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995).[4]

UBS Defendants in their Reply fail to distinguish the opinion in Cabrera-Morales v. UBS Trust Company of Puerto Rico, 769 F. Supp. 2d 67 (D.P.R. 2011). Doc. No. 35 at 13. However, the holding in Cabrera is not limited by the parties to the action. Judge Fusté held in Cabrera that "...estoppel applied when the nonsignatory's 'entire case hinge[d] on its asserted rights under" the

---

[4] See also Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 779 (2nd Cir. 1995) ("As the district court pointed out, however, 'the situation here is inverse: E & S, as signatory, seeks to compel Thomson, a non-signatory.' While E & S suggests that this is a non-distinction, the nature of arbitration makes it important. Arbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so.").

6

agreement containing the arbitration clause.'" Id. at 72. The instant case does not entirely hinge on rights asserted under the agreement containing the arbitration clause. Plaintiffs' claims hinge on rights asserted under the Deed of Trust and sound in tort, which does not contain an arbitration agreement. Therefore, the distinction is erroneous.

Similarly, UBS Defendants attempt to hold that the opinion in Barros v. UBS Trust Company of Puerto Rico, 915 F. Supp. 2d 226 (D.P.R. 2012) is applicable because plaintiff in Barros held an individual UBS PR brokerage account. However, UBS Defendants conveniently fail to mention that plaintiff in Barros held the UBS PR brokerage account long before the relevant trust in Barros was even created. Id. at 228-229. Therefore, in Barros, plaintiff had voluntarily entered into arbitration long before any controversies with UBS Trust. Also, In Barros, UBS Defendants did not used the assets held in trust as bait to attempt to bind plaintiff into arbitration, as in this case. These distinctions make Barros inapplicable.

Also, UBS Defendants attempt to minimize the distinctions raised by Plaintiffs to the inapplicable case law cited in the Motion to Compel. However, the distinctions are clearly relevant since in none of the cases cited by UBS Defendants present a situation like the instant case where UBS Defendants attempt to piece together an arbitrability puzzle made up of exceptions and unconscionable provisions.

Finally, UBS Defendant unduly rely on the rent payments Hargen has received as ground for showing that he has received direct benefits from the Account Application. This is a logical long-jump. Hargen is beneficiary for purposes of distribution. He requested distribution in writing in 2014 and to this day UBS Trust has not yet performed distribution since they continue to seek that Hargen enter into some form of arbitration provision. Thus, any rents are being received by virtue of UBS Trust's inaction and default in distributing to Hargen the assets held in trust.

7

**IV.     UBS Defendants misconstrue the judicial proceedings initiated in Puerto Rico court**

UBS Defendants misconstrue and ignore their actions in Commonwealth Court. For example, UBS Trust and UBS PR argued in the Second State Case that consolidation with the First State Case, filed by UBS Trust, was proper. See Exhibit A: Sánchez Carmona v. UBS Trust Company of Puerto Rico, et al., Civil Case No. KPE2014-0305, Urgent Opposition to Request for Preliminary Injunction at 16-17 ("In light of the above, we respectfully hold that Ms. Sanchez is required to make her claims, both permissible and compulsory in the action previously filed by UBS Trust.") Thus, in the Second State Case, UBS Trust and UBS PR called for a judicial forum as appropriate to resolve Sánchez's and Hargen's claims, permissible and compulsory. Also, UBS Defendants failed to mention in their Reply that UBS Trust sought a dismissal on the merits in its favor of said case, which clearly included allegations of fact raised against UBS PR and UBS Financial in the instant case. Doc. Nos. 22-3 & 22-8. Thus, if no issues or facts alleged in the instant case were resolved in prior cases it was the result of Plaintiffs successful litigation in Commonwealth court against UBS Defendants' shifty litigation strategy to attempt to gain leverage by a dismissal with prejudice of the First State Case and the factual allegations therein.

Therefore, Defendants did not merely answer or defenses themselves from claims. They used judicial forums strategically to defend their interests. UBS asserted offensively a claim against Hargen in Commonwealth court. Hargen filed a counterclaim against UBS Trust with factual allegations included in the instant case. UBS Trust moved the Commonwealth court for an adjudication of its merits via a dismissal with prejudice. Upon filing in Commonwealth court, UBS Trust further moved for dismissal with prejudice before the Puerto Rico Court of Appeals. The petition for dismissal with prejudice happened after UBS Defendants had moved for arbitration in the First Federal Case. See Joca-Roca Real Estate, LLC v. Brennan, 772 F.3d 945, 948-949 (1st Cir.

2014). All these efforts are not an accidental foray into the court. They are active and offensive attempts to obtain favorable judgment on the merits for a considerable number of claims and factual allegations also raised in the instant case.

Finally, it is revealing that one argument raised by UBS Defendants in the context of waiver is that it should not be deemed to attach to new claims. Nevertheless, this claim-by-claim approach argued by UBS Defendants in the context of waiver is somehow avoided or unwanted in the context of their discussion of Cabrera, where they fail to mention that Plaintiffs' raise claims against US Trust exclusively for its own conduct as trustee and completely unrelated to any investment activity. Again, the story behind UBS Defendants' attempt to force the instant case into arbitration is that not one single theory carries the day to bind all parties and all claims to arbitration.

**V.     Intertwinement of claims operates in favor of denying or staying arbitrable claims**

Staying the instant case pending arbitration will effectively cause Plaintiffs to lose their right to a judicial forum on non-arbitrable claims. Legal doctrines such as issue preclusion and estoppel will likely thwart Plaintiffs' right to pursue a judicial remedy after arbitration.

A court sitting in this District held similarly also in the context of FINRA arbitration. The court determined that seemingly arbitrable claims were in fact non-arbitrable when intertwined with underlying non-arbitrable factual allegations. See María F. Caldareri, et al., v. Citibank, N.A., et al., No. 15-2069, slip. op. at 2-3 (D.P.R. Aug. 8, 2016) (García, J.) The guiding principle in Caldareri was to not deprive a plaintiff the right to a judicial forum since factual issues that would necessarily be resolved in arbitration would estop a plaintiff from seeking judicial remedy of other non-arbitrable claims. This principle applies to the instant case. More so when UBS Defendants attempt to piece together a puzzle made up of exceptions and unconscionable provisions and where not one single

9

theory carries the day to bind all parties and all claims to arbitration. Particularly in the case of Amaral who is a non-signatory to all relevant agreements.

**WHEREFORE**, Plaintiffs Paul T. Hargen Rodríguez, María L. Amaral Biblioni, and their Conjugal Partnership, respectfully request the Court to DENY UBS Defendants' "Joint Motion to Compel Arbitration" (Docket No. 14).

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this December 8, 2016.

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this date we presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system, which will send notification to all attorneys who have filed appearances in this case.

**SEPULVADO & MALDONADO, PSC**
Citibank Towers, Suite 1900
252 Ponce de León Avenue
San Juan, Puerto Rico 00918
Telephone: 787.765.5656
Fax: 787.294.0073

*/s/ Lee R. Sepulvado Ramos*
LEE R. SEPULVADO RAMOS
USDC-PR 211912
lsepulvado@smlawpr.com

*/s/ Albéniz Couret Fuentes*
ALBÉNIZ COURET FUENTES
USDC-PR 222207
acouret@smlawpr.com

*/s/ Aníbal J. Núñez González*
ANÍBAL J. NÚÑEZ GONZÁLEZ
USDC-PR 230101
anunez@smlawpr.com