**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PAUL T. HARGEN-RODRIGUEZ, *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil No.** 16-2340 (FAB) |
| UBS TRUST COMPANY OF PUERTO RICO, *et al.*, | |
| **Defendants.** | |

**OPINION AND ORDER**

BESOSA, District Judge.

   Before the Court is a joint motion to compel arbitration and stay proceedings filed by defendants UBS Trust Company of Puerto Rico ("UBS Trust"), UBS Financial Services Incorporated of Puerto Rico ("UBS-PR"), and UBS Financial Services, Inc. ("UBS Financial"). (Docket No. 14.)

   Plaintiffs Paul Hargen-Rodriguez ("Hargen-Rodriguez"), Maria Amaral-Biblioni ("Amaral"), and their conjugal partnership brought this action against defendants, alleging federal and statutory violations, including securities fraud and violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"). (Docket No. 1.) For the reasons set forth, the Court **GRANTS** defendants' motion to compel arbitration.

## I.    **BACKGROUND**

On October 25, 2000, Mason Robert Hargen ("Hargen") executed a deed of trust[1] and created an irrevocable grantor trust ("Hargen Trust"). (Docket No. 1 at p. 4.)  Hargen designated himself as first beneficiary, his wife Nellie Sanchez-Carmona ("Sanchez-Carmona") as second beneficiary,[2] and his son Hargen-Rodriguez as third beneficiary of the Hargen Trust.[3] Id. Hargen also designated PaineWebber Trust Company of Puerto Rico (now UBS Trust) as trustee.  Id.  According to the deed of trust, the trustee (UBS Trust)[4] shall "retain, administer, sell, invest and reinvest" assets transferred to the trust and acquired by the trust. (Docket No. 14 at pp. 13 and 17.)

On October 26, 2000, an investment account was opened and an Account Applications and Agreement for Organizations, Businesses, and Trusts ("Account Agreement") with PaineWebber, Inc. (now UBS Financial) was singed. (Docket No. 14-1.)  Through the agreement, a Resource Management Account was created with PaineWebber

---

[1] Specifically referred to as "Deed of Trust Number 44." (Docket No. 1 at p. 4.)

[2] The designation would begin after Hargen's death. (Docket No. 1 at p. 4.)

[3] The designation would begin after Sanchez-Carmona's death. (Docket No. 1 at p. 4.)

[4] UBS Trust is an affiliate of both UBS-PR and UBS Financial.

Incorporated of Puerto Rico (now UBS-PR)[5] on the trust's behalf.
Id.

Hargen died on September 17, 2003, and Sanchez-Carmona became the trust's beneficiary. (Docket No. 1 at pp. 5-6.) Plaintiffs allege that UBS Trust failed to contact and notify Sanchez-Carmona of her beneficiary status, interests, and rights regarding the Hargen Trust. (Docket No. 1 at p. 7.) After Sanchez-Carmona's death, Hargen-Rodriguez became the trust's beneficiary and requested to receive income distributions from the trust's investments. (Docket No. 14-1, Ex. 4.) In June 2016, Hargen-Rodriguez opened a personal investment account with UBS Financial ("Domestic Account") and executed a Client Relationship Agreement. (Docket No. 14-1, Ex. 6.)

Plaintiffs' suit against the defendants alleges violations of: (1) Sections 10(b) and 15(c) of the 1934 Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78o(c); (2) Rule 10b-5, 17 C.F.R. § 240.10b-5; (3) Section 1964(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c); and (4) article 410 of the Puerto Rico Uniform Securities Act, P.R. Laws Ann. tit. 10, § 890. (Docket No. 1.) Plaintiffs also allege breach of contract and breach of fiduciary duty, and demand a

---

[5] UBS-PR is a subsidiary of UBS Financial.

declaratory judgment.  Id.  Defendants filed a joint motion to compel arbitration and to stay the proceedings, Docket No. 14, which plaintiffs opposed, Docket No. 22.  Defendants replied, Docket No. 35, and plaintiffs filed a sur-reply, Docket No. 38.

## II. Discussion

Defendants request the Court to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4. Defendants also request that the case should be stayed pending the outcome of arbitration.

Defendants argue that plaintiffs must arbitrate their claims. because (1) having embraced the Account Agreement, plaintiffs are bound to arbitrate; (2) plaintiffs are bound to arbitrate their claims pursuant the Direct-Benefits Exception; and (3) plaintiffs are bound to arbitrate because Hargen-Rodriguez is a third-party beneficiary of the Account Agreement of the Hargen Trust. (Docket No. 14.)  Plaintiffs disagree and contend that no valid contract exists that requires the parties to arbitrate their claims.

### A.    Legal Standard

The Federal Arbitration Act, 9 U.S.C. §§ 1-16, establishes the validity and enforceability of written arbitration agreements.  The FAA also provides that a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2. The FAA expresses a Congressional policy in favor of arbitration, and places arbitration agreements on an equal footing with other contracts. 9 U.S.C. § 2; see Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449, 126 S.Ct. 1204, 163 L.Ed.2d 1308 (2006). The FAA mandates district courts to compel arbitration when the parties have signed a valid arbitration agreement governing the issues in dispute, removing the district court's discretion over whether to compel arbitration or provide a judicial remedy to the parties. 9 U.S.C. § 2; see Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 224, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The existence of a valid arbitration agreement is based on the consent of the parties to arbitrate at least some of their claims, foregoing a judicial remedy for those claims. McCarthy v. Azure, 22 F.3d 351, 354-55 (1st Cir. 1994) (internal citations omitted). A party cannot be required to submit any dispute to arbitration that he or she has not agreed to submit. See AT&T Techns., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 651, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

Based on the above principles, the United States Court of Appeals for the First Circuit Court has set forth four requirements that must be satisfied for a court to compel

arbitration: (1) a valid arbitration agreement must exist; (2) the moving party must be entitled to invoke the arbitration clause; (3) the other party must be bound by the clause; and (4) the claim must fall within the scope of the arbitration clause.  InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003).

### 1.   Valid Arbitration Agreement

Defendants have provided the Court with the Account Agreement signed by UBS Financial and UBS Trust (as trustee for the Hargen Trust).  The agreement provides for arbitration of disputes in accordance with the Master Account Agreement:

> By signing below, I acknowledge and agree as follows for myself or on behalf on the account holder: . . . 2. That in accordance with the last paragraph of the Master Account Agreement entitled "Arbitration," the Account Holder agrees in advance to arbitrate any controversies [sic] which may arise with PaineWebber [now UBS] in accordance with the terms outlined therein.  (Docket No. 14-1.)

Furthermore, the Master Account Agreement states:

> Client agrees, and by carrying an account for Client the Firm agrees, that any and all controversies which might arise between the Firm, and any of the Firm's employees or agents and Client concerning any account, transaction, dispute or the construction, performance or breach of this or any other agreement, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.  Any arbitration under this agreement shall be governed by the Federal Arbitration Act . . .  (Docket No. 14-1, Ex. 3.)

The Client Relationship Agreement, which Hargen-Rodriguez signed when he opened the Domestic Account, also includes a mandatory arbitration clause.  The clause states:

> You, UBS Financial Services Inc. and UBS Financial Service Incorporated of Puerto Rico agree as follows: to resolve any controversy, claim or issue in any controversy that may arise between you and UBS Financial Services or UBS Financial Services Incorporated of Puerto Rico by arbitration, whether it happened before or after, or at the time this Agreement was executed, including but not limited to controversies, claims or issues in any controversy concerning any account, transaction, dispute or the constructions, performance of breach of this Agreement or any other agreement. (Docket No. 14-1, Ex. 6 at pp. 33-34.)

Defendants have demonstrated the existence of valid arbitration clauses.  Plaintiffs argue, however, that the Client Relationship Agreement arbitration clause is substantively and procedurally unconscionable.  Plaintiffs cite cases from other circuit courts, but ultimately fail to elaborate on the issue as to why the arbitration provision is unconscionable.  A party may not merely "mention a possible argument in the most skeletal way, leaving the Court to do counsel's work, create the ossature for the arguments, and put flesh on its bones." U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  Therefore, plaintiffs' conclusion that the arbitration clause is unconscionable is waived; the Court holds that a valid arbitration agreement exists.

### 2. Moving Party

The second requirement of the InterGen N.V. test is satisfied if the party seeking to invoke the arbitration clause is a party to the agreement containing the arbitration provision. See InterGen N.V., 344, F.3d at 143. Here, the Account Agreement was signed by UBS Financial and UBS Trust (as trustee of the Hargen Trust and for the benefit of the beneficiary who is now Hargen-Rodriguez). Therefore, defendants can properly invoke the agreement's arbitration provision.

### 3. Other Party Must Be Bound

The third requirement is satisfied if the party against whom the moving party seeks to enforce the arbitration agreement is a party to the agreement. See InterGen N.V., 344 F.3d at 143. Plaintiff Hargen-Rodriguez did not sign the agreement but is a beneficiary to the Hargen Trust and as such is considered a party to the agreement.

### 4. Claims Must Fall Within Scope of Arbitration Agreement

Finally, defendants' claims must be within the scope of the arbitration clause. Courts are tasked with determining whether the arbitration clause is susceptible of an interpretation that covers the asserted dispute. See AT&T, 475 U.S. at 650, 106 S.Ct. 1415. Given the preference for arbitration

in the FAA, the Supreme Court has recognized that arbitration clauses should be interpreted broadly. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)("The Arbitration Act establishes that, as a matter of federal law, any doubts [sic] concerning the scope of arbitrable issues should be resolved in favor of arbitration . . ." (internal quotations omitted). An order to "arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T, 475 U.S. at 650, 106 S.Ct. 1415.

        The First Circuit Court of Appeals has held consistently that broad arbitration clauses are not limited only to disputes over the terms of the contract or to disputes arising during the performance of the contract. See Acevedo Maldonado v. PPG Indus., Inc., 514 F.2d 614, 616 (1st Cir. 1975) (finding that broad language like "any controversy or claim arising out of or relating to [an] Agreement or the breach thereof" covers "contract-generated or contract-related disputes between the parties however labeled; it is immaterial whether claims are in contract or in tort"). Other circuit courts and courts in this district also apply a strong presumption in favor of arbitration when there is broad all-encompassing language in arbitration clauses. See

Dialysis Access Center, LLC v. RMS Lifeline, Inc., 638 F.3d, 367, 351-82 (1st Cir. 2011) (discussing how several circuits have recognized that phrases like "arising under" and "arising out of" should be interpreted broadly in favor of arbitration).

Here, plaintiffs' claims arise from or relate to the Account Agreement and the Master Account Agreement. The recovery of losses and damages the plaintiffs seek relate directly to the Hargen Trust and the agreements that crystallized the trust. The Court finds that plaintiffs' claims fall within the scope of the arbitration agreements.

Because the Court finds that all four requirements of the InterGen N.V. test are met, the Court **GRANTS** defendants' motion to compel arbitration.

   B.   **Stay of Proceedings Pending Arbitration**

The final inquiry for the Court is to determine whether to stay plaintiffs' claims pending the completion of arbitration. Pursuant to section 3 of the FAA, where the issues before a Court are arbitrable, the Court shall "stay the trial of the action until such arbitration has been in accordance with the terms of the agreement." 9 U.S.C. § 3. The First Circuit of Appeals has held, however, that a "court may dismiss rather than stay, a case when all of the issues before the court are arbitrable." Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 n. 21 (1st Cir. 1998); accord

Next Step Med. Co. v. Johnson & Johnson Int'l, 619 F.3d 67, 71 (1st Cir. 2010) ("Where one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable."). Having found that all claims in this case are arbitrable, the Court DISMISSES this case, without prejudice.

**IV.  CONCLUSION**

For the reasons discussed above, the Court **GRANTS** defendants' motion to compel arbitration, and the case is **DISMISSED WITHOUT PREJUDICE.**

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 7, 2017.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE